UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. 11-CR-0241

CHRISTOPHER J. HALFMANN,

        Defendant.

## ORDER DENYING MOTION TO SUPPRESS

On December 20, 2011, a federal grand jury sitting in Milwaukee returned a six-count Superceding Indictment against Defendant Christopher Halfmann and three others. In Count One of the Superceding Indictment, Halfmann and the co-defendants are charged with selling and transporting wildlife with a market value in excess of $350.00 that they knew had been taken and possessed in violation of Wis. Stat. § 29.024, in violation of 16 U.S.C. §§ 3372(a)(2)A, 3373(d)(1)(b) and 2 (the Lacey Act). In Count Two of the Superceding Indictment, the defendants are charged with attempting to sell and transport wildlife with a market value in excess of $350.00 that they knew had been taken and possessed in violation of Wis. Stat. §§ 29.024 and 29.184, also in violation of the Lacey Act. The remaining counts charged the defendant with making false or fictitious statements in the course of the criminal investigation, in violation of 18 U.S.C. § 1001.

The case is currently before the Court on the motion of Defendant Halfmann to suppress statements he made to a Wisconsin Department of Natural Resources (DNR) warden from his hospital bed on September 9, 2011. Earlier that day, Halfmann had been mauled by a bear that he

and the co-defendants had hunted and shot. Warden Benjamin Treml was directed by his supervisor to find out from Halfmann the circumstances regarding the incident. Specifically, the supervisor wanted Halfmann to find out whether the bear had injured anyone else and whether it had been shot. In fact, the incident had occurred in the Western part of the state and the Green Bay Regional DNR officials had apparently only heard that a bear attack had occurred. Halfmann had originally been taken to the hospital in Merrill, Wisconsin and was subsequently transported to St. Vincent Hospital in Green Bay, Wisconsin. Warden Treml, who at that time was a Marine Enforcement Officer, was directed to follow-up on the report because the Land Enforcement Officer was unavailable.

After discovering that the person attacked by the bear had been taken to St. Vincent Hospital, Warden Treml proceeded to that location and arrived at approximately 10:10 p.m. He was advised that the individual, who was later identified as Defendant Halfmann, was on the 8th floor of the hospital. Warden Treml proceeded to that location and spoke with Nurse Bonnie Kasprzycki. Nurse Kasprzycki advised Warden Treml that Halfmann had informed them that the bear had been killed and that the head had been taken to the veterinarian who determined that it did not have rabies. Warden Treml asked to speak with Halfmann and Nurse Kasprzycki conveyed his request. A short time later she returned advising him that Halfmann preferred that he come back later. The nurse advised Warden Treml that Halfmann had just gotten out of surgery at 9:00 p.m. and had taken some medication. Warden Treml called his supervisor who said it would be better to get details and find out where the incident occurred and who was involved. Warden Treml then explained this to Nurse Kasprzycki and she returned to speak with Halfmann. A short time later

2

she motioned Warden Treml into the room and he followed her. There he spoke with Halfmann for about forty minutes about what had occurred.

Warden Treml testified that Halfmann seemed tired and in pain, but responded to his questions without objection. He described what had occurred and told Warden Treml that the bear had been killed. He also indicated no one else was injured and explained that the incident had been investigated by the Lincoln County Sheriff's Department. Although Halfmann didn't directly answer all of his questions, Warden Treml felt that the interview took place in a conversational tone and after obtaining the basic information he left.

Nurse Kasprzycki also testified and indicated that before allowing Warden Treml into the victim's room she had contacted a supervisor who told her that she should cooperate with the DNR investigation. She also indicated that she remained in the room for less than two minutes and it appeared to her at one point that Halfmann was dozing off. She then left and did not return until after Warden Treml had left.

Based upon this evidence, Halfmann argues that his statement was involuntary and should be suppressed. Halfmann contends that, having been attacked by a bear in the early morning hours of the day and thereafter remaining either in the hospital or undergoing surgery, he was in no condition to give a statement. He further argues that he was under the influence of pain medication which further interfered with his ability to voluntarily give a statement.

To be admissible, a statement of a defendant must be voluntary. In determining whether a statement is voluntary, the Court must view the totality of the circumstances to assess "whether the defendant's will was overborne." *United States v. LeSchore*, 543 F.3d 935, 940 (7th Cir. 2008). The Seventh Circuit has cautioned that "when the interrogating officers reasonably should have

3

known that a suspect is under the influence of drugs or alcohol, a lessor quantum of coercion may be sufficient to call into question the voluntariness of the confession." *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991). Before a confession will be suppressed as involuntary, there must be evidence of coercive police conduct. *Colorado v. Connelly*, 479 U.S. 157, 165-167 (1986).

On the basis of the evidence presented, I find that the statement made by Halfmann was voluntary. This was not a case in which a law enforcement officer in the midst of an investigation took advantage of a suspect who was under the influence of alcohol, drugs, or medication. It is true that Halfmann had undergone surgery and was still under the influence of pain medication, but Warden Treml was there simply to find out basic facts to insure the safety of the public. While Nurse Kasprzycki had informed him that the Halfmann had told her that the bear was dead, it was not unreasonable for Warden Treml to confirm that information for himself. He also wanted to know who else was present and whether anyone was hurt. There is no evidence that Warden Treml's questioning was aggressive or coercive. As he described it, the interview appeared conversational and Halfmann volunteered information in the course of the interview.

Although there were some discrepancies between the testimony of Nurse Kasprzycki and Warden Treml, I find no reason to question the credibility of either witness. The discrepancies appeared to be due to differences in memory as opposed to any intent to fabricate or mislead. Having wanted to avoid the interview in the first place, it is certainly possible that Halfmann appeared to be dozing when Nurse Kasprzycki first entered the room. She left shortly thereafter, however, and it is clear from Officer Treml's testimony and his report that Halfmann spoke with him in some detail about the events. Warden Treml was totally unaware of the undercover investigation by federal officials that had been active for some period of time. His instructions

4

were simply to find out what he could about the bear attack so as to insure that no one else was hurt and that the public was fully protected. Given the urgent need for such action, I find no misconduct on the part of Warden Treml in speaking with Halfmann, despite his condition. Neither his manner nor the nature of the questions he asked were coercive.

Under the circumstances, I conclude that there was no coercive police misconduct and that the statements given by Halfmann in response to Warden Treml's questions were voluntary. And because Treml was not in custody or even a suspect in any crime, no *Miranda* warnings were required. Under these circumstances, Halfman's motion to suppress his statement must be denied.

**SO ORDERED** this   30th   day of May, 2012.


           s/ William C. Griesbach
           William C. Griesbach
           United States District Judge